USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-29-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARLENY ACEVEDO, et al.,

                        Plaintiffs,

- against -

JASON TURNER, et al.,

                        Defendants.

**REPORT AND RECOMMENDATION**

01 Civ. 6014 (SHS)(RLE)

---

To the HONORABLE SYDNEY H. STEIN, U.S.D.J.:

## I. INTRODUCTION

Plaintiffs move to enforce paragraph three of the Stipulation and Order of Settlement Agreement ("Stipulation"), entered in this case on March 19, 2004. For the reasons set forth below, I recommend that the motion be **DENIED**.

## II. FACTS

### A. The Complaint

On July 2, 2001, Plaintiffs filed a class action Complaint and order to show cause seeking a temporary restraining order against Defendants Jason Turner, Brian J. Wing, and Antonia Novello[1] (collectively, "the City[2]") before United States District Judge Sidney H. Stein in this District. (Attorney's Decl. in Supp. of Pls.' Mot. for Enforcement of the Settlement Agreement ("Atty. Decl. Pl.") at 2.) Plaintiffs argued that the City's policy and practice of denying

---

[1] After the Complaint was filed, Verna Eggleston succeeded Jason Turner as Commissioner of New York City Human Resources Administration ("HRA"), and Robert Doar replaced Brian J. Wing as Acting Commissioner of the New York State Office of Temporary and Disability Assistance ("OTDA"). Robert Doar was then appointed as Commissioner of HRA, and David Hansell was appointed Commissioner of OTDA. David Hansell resigned as Commissioner of OTDA in June 2009, and John Paolucci was designated to exercise powers of the Commissioner while the office is vacant. (Pl. Mem. at 2.)

[2] The Court's jurisdiction over the State defendants expired on March 22, 2006. (Pl. Mem. at 4.)

applications for public assistance benefits, and discontinuing public assistance and Medicaid for those receiving such benefits, without notice, violated the Plaintiffs' rights under 42 U.S.C § 1983, the Due Process and Equal Protection Clauses of the United States Constitution, federal Medicaid law and regulations, the Due Process and Equal Protection Clauses of the New York State Constitution, New York State Medical law and regulations, and New York State public assistance law and regulations. (*Id.*) On March 19, 2004, after discovery and settlement of Plaintiffs' preliminary injunction motion, the parties reached, and Judge Stein subsequently approved, a Stipulation and Order of Settlement. ("the Stipulation").

## B. The Stipulation

Under the Stipulation, Plaintiffs were certified as a class consisting of all persons who had applied for, were currently applying for, received, and were currently receiving public assistance from the City, and for whom public assistance and/or Medicaid had been reduced, discontinued, or denied on or after January 1, 2000, because the applicants and /or recipients had failed to comply with child support cooperation requirements. (Stipulation at ¶ 2.) Paragraph three of the Stipulation states that:

> City defendant will provide to every public assistance recipient who, on or after the date of the "so ordering" of this Stipulation and Order of Settlement ("Stipulation"), is to be sanctioned for failure to cooperate with OSCE [Office of Child Support Enforcement] a notice that contains the following information: (a) the date of the failure to cooperate; (b) the name of the persons who failed to cooperate; (c) what the failure to cooperate was; and (d) the phone number to contact to report good cause and to initiate the process of complying and lifting the OSCE sanction. City defendant will provide this notice in either manual form or will ensure correct coding to generate a computer-generated notice using State defendants Client Notification System.

Paragraph four of the Stipulation provides applicants with the same notice entitlements as recipients.

2

The Stipulation provides rules regarding oversight, training, and monitoring. (Stipulation at ¶¶ 9-15.) Specifically, paragraph nine states that every four months the City will review households that had been sanctioned within the previous four-month period. This case file review would consist of a sample of one hundred households who received a sanction by the City within the four-month period. (*Id.*) The goal behind this periodic monitoring was to determine if households that had been sanctioned had received proper notice as required by paragraphs three and four of the Stipulation. (*Id.*)

Paragraph eleven of the Stipulation states that within forty-five days of the review required by paragraph nine, the City will provide Plaintiffs with "(a) a list of all cases reviewed; (b) a list of all cases for which the City defendant retrieved a notice effectuating the sanction; and (c) for each retrieved notice, whether the notice was completed as required by ¶¶ 3 and 4 of the Stipulation."

Paragraph fifteen provides individual protection for Plaintiffs who claim that the City has violated paragraph three of the Stipulation. Paragraph fifteen states that

> [w]ithout diminishing the right of the plaintiff class to seek enforcement of this Stipulation, City defendant agrees to provide a mechanism pursuant to which plaintiffs' counsel may bring to the attention of the City defendant written complaints regarding individual incidents in which City defendant allegedly violated the terms of this Stipulation. City defendant will promptly investigate the alleged incident(s) and take any appropriate steps required to resolve the issue(s) concerning each individual case. City defendant's counsel will report the results of such investigation, including what steps, if any, were taken to resolve the issue(s), in writing to plaintiffs' counsel within seven (7) business days of receiving plaintiffs' counsel's report of the alleged incident(s).

The dispute resolution procedures in the Stipulation provide Plaintiffs with procedures to follow if Plaintiffs believe that the City is engaged in a systemic failure to comply with the agreement. Paragraph seventeen instructs Plaintiffs' counsel to notify the City within four months of receipt of evidence that the City is engaged in systemic failure to comply with the

agreement. Both parties are to attempt to resolve the allegation of noncompliance without judicial intervention. Only if the parties are unable to resolve the issue can Plaintiffs move to enforce the Stipulation within sixty days of the original noncompliance notice to the City.

Paragraph eighteen requires that, in the event of an allegation of a systemic failure to comply, Plaintiffs provide the City with written notice of the specific claims of violation thirty days before the official motion to enforce the Stipulation is submitted. This thirty-day period is provided to give the City a chance to cure any alleged violation before judicial intervention.

Paragraph nineteen places the burden on the Plaintiffs to prove noncompliance, as the City will be considered presumptively in compliance with the Stipulation requirements. Plaintiffs must establish that the

> defendant's alleged failures or omissions were not minimal or isolated, but were substantial and sufficiently frequent or widespread to be systemic. Non-systemic individual or isolated violations of this Stipulation shall not form a basis for finding that defendant has acted in violation of this Stipulation.

Finally, paragraph twenty of the Stipulation states that this Court shall retain jurisdiction over the Stipulation for enforcement purposes for twenty-four months from the time the Stipulation was "so-ordered." Extensions of this Court's jurisdiction are possible if Plaintiffs claim that the City has failed to comply with the Stipulation. Portions of the original Stipulation have been extended several times, so that this Court retained jurisdiction until November 15, 2009. (Atty. Decl. Pl., Ex. J.)

**C. Plaintiff's Evidence of the City's Violation of the Stipulation**

On February 25, 2009, the City wrote this Court a letter on behalf of both parties requesting a two-week interim extension of the Stipulation, in order to institute a corrective action plan to remedy the sole remaining area of compliance - notice to recipients as required by paragraph three of the order. (Atty. Decl. Pl., Ex. K.) Plaintiffs point to this letter as evidence

establishing a substantial and systemic failure by the City to send notices of intent to enforce sanctions against recipients for alleged failure to comply with child support cooperation requirements. (Mem. in Supp. of Pls.' Mot. for Enforcement of the Settlement Agreement ("Pl. Mem." at 7-8.)

Plaintiffs also point to four case file reviews conducted by the City pursuant to paragraphs nine and eleven of the Stipulation as evidence of a substantial and systemic failure to comply with paragraph three of the Stipulation. (Atty. Decl. Pl. at 7-9.)[3] Each case file review represents a sampling of approximately one hundred households whose public assistance and/or Medicaid had been discontinued based on a failure to comply with requirements mandated by the Office of Child Support Enforcement ("OCSE"). (*Id.* at 6-9.) Plaintiffs maintain that the percentage of households which did not receive notice as required under paragraph three constitute a substantial and systemic failure to comply with the Stipulation. (Atty. Decl. Pl. at 7-8.)

**D. Motion for Enforcement Procedural History**

On May 1, 2009, pursuant to paragraph seventeen of the Stipulation, Plaintiffs asked the City to lift the imposed sanctions and restore benefits to all recipients who were sanctioned without notice as required by the Stipulation from June 20, 2007, to the present. (*Id.* at 9-10.) On June 2, 2009, the City sent a letter to Plaintiffs, refusing to comply with Plaintiffs' request. (*Id.* at 10.) As required by paragraph eighteen of the Stipulation, Plaintiffs sent the City a letter on June 8, 2009, informing the City of their intent to move for enforcement of the Stipulation. (*Id.*)

On September 8, 2009, Plaintiffs moved to enforce the Stipulation, requesting an order directing the City to identify all recipient class members whose public assistance and/or

---

[3] This includes reviews eleven through fourteen (Atty. Decl. Pl., Exs. N-Q), and refer to data submitted to the Plaintiffs by the City from June 20, 2007, to December 15, 2008. (Atty. Decl. Pl. at 7-8.)

Medicaid had been reduced or discontinued from June 20, 2007, to the present without notice of the impending sanction as required by paragraph three of the Stipulation. (Mot. To Enforce the Stipulation ("Mot. to Enforce") at ¶ 1.) Plaintiffs asked that the City lift all sanctions received by households within the relevant time period without notice, that benefits be reinstated for those households, and that retroactive benefits be granted to those households for the relevant time period. (*Id.* at ¶¶ 2-4.) Specifically for those recipients whose Medicaid had been discontinued, Plaintiffs asked that the City provide instructions regarding the proper way to submit medical bills for services that should have been provided by Medicaid during the time of discontinuation, and for the City to reimburse such medical bills submitted. (*Id.* at ¶¶ 5-6.) Finally, Plaintiffs requested an extension of this Court's jurisdiction until this motion has been fully resolved, attorneys' fees as provided by 42 U.S.C. § 1988, an award of costs and disbursements, and an order of such other relief as the Court deems just and proper. (*Id.* at ¶¶ 7-10.) This matter was referred to the undersigned on November 12, 2009.

## III. DISCUSSION

**A. Jurisdiction Over the Motion to Enforce the Stipulation**

Plaintiffs have submitted a motion to enforce pursuant to paragraph eighteen of the Stipulation. By "so ordering" this Stipulation, this Court has accepted certain obligations. *See Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000). The Court's principal obligation is the "duty to enforce the stipulation that it has approved." *Id.* Although there are limits to a court's jurisdiction over a settlement agreement, this Court does not face such roadblocks. "[A] federal court has jurisdiction to enforce a settlement agreement only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement." *See Scelsa v. City University of New York*, 76 F.3d 37, 40 (2d Cir. 1996); *see also*

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994) ("[W]e think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts ....") Here, the Court has specifically retained jurisdiction over the Stipulation "for the purposes of enforcement" (Stipulation at ¶ 20), and properly should consider the merits of Plaintiffs' Motion to Enforce.

## B. Plaintiffs' Allegation of a Violation by the City

Plaintiffs allege a violation of paragraph three of the Stipulation. (Pl. Mem. at 12.) They claim that the City has failed to provide notice to recipients of public assistance before imposing sanctions for failure to comply with child support cooperation requirements as paragraph three requires. (*Id.* at 7.) Under the Stipulation, Plaintiffs have three possible avenues to seek relief. First, an individual class member is entitled "to request a fair hearing concerning that individual's public assistance or Medicaid benefits, [and] to seek judicial relief pertaining to the fair hearing." (Stipulation at ¶ 15.) Second, Plaintiffs may also seek individualized relief pursuant to paragraph fifteen of the Stipulation (*Id.*) The City is obligated to have a system in place where Plaintiffs, via their counsel, may bring written complaints regarding individual alleged violations to the City's attention. (*Id.*) The City is required to investigate these alleged violations, and report any steps taken to resolve actual violations to Plaintiff's counsel within seven business days of the initial notice. (*Id.*)

Alternatively, Plaintiffs may seek relief outside of an individualized context by moving for enforcement of the Stipulation. (Stipulation at ¶ 17.) In order to move for enforcement under paragraph seventeen of the Stipulation, Plaintiffs must show that the City's alleged violations were "not minimal or isolated, but were *substantial* and *sufficiently frequent or widespread* to be

7

systemic." (Stipulation at ¶ 19, *emphasis added*.) The City is presumed to be in compliance until such showing of substantial violations is made. (*Id.*) Plaintiffs have elected to proceed under this provision. (Atty. Decl. Pl. 9-10.)

## C. Plaintiffs' Evidence Fails to Establish a Substantial Violation

### 1. Case File Reviews at Issue

Plaintiffs assert that noncompliance rates supplied by the City show substantial violations. All noncompliance rates are derived from case file reviews conducted pursuant to paragraphs nine and eleven of the Stipulation. Plaintiffs and the City disagree slightly with regard to the percentage of no-notice violations of paragraph three of the Stipulation that have occurred from June 2007 to December 2008, as shown in the chart below:

|  | Plaintiffs' evaluation of the noncompliance rate (percent of households sanctioned without notice) | City's evaluation of the noncompliance rate |
|---|---|---|
| Case Review File 11 (6/20/2007-10/20/2007) | 13% of households (both applicants and recipients). (Atty. Decl. Pl. at 9.) | 11.7%. (Mem. in Opp. to Pls.' Mot. for Enforcement ("Def. Mem.") at 24) |
| Case Review File 12 (10/20/2007-2/20/2008) | 14% (both applicants and recipients). (Atty. Decl. Pl. at 8-9.) | 9.3%. (Def. Mem at 23.) |
| Case Review File 13 (2/20/2008-6/20/2008) | 8-9% (recipients only). (Atty. Decl. Pl. at 8.) | 7.6%. (Def. Mem at 22.) |
| Case Review File 14 (10/1/2008-12/15/2008) | 12-13% (recipients only). (Atty. Decl. Pl. at 8.) | 11.4%. (Def. Mem at 21.) |

For purposes of the Court's decision, Plaintiffs are willing to concede that a review of the City's calculations show at best an overall approximate noncompliance rate of 10%. (*Id.*) The Court agrees with Plaintiffs that the differences in the chart are minor and the question of whether there was substantial noncompliance will not turn on those differences. (Mem. in

8

Further Supp. of Pls.' Mot. for Enforcement of the Stipulation ("Pls.' Reply") at 3-4.) The Court will use the 10% rate in evaluating the City's level of noncompliance.

Plaintiffs also argue that a letter written by the City and submitted to the Court on February 25, 2009 (Atty. Decl. Pl., Ex. K.), is evidence showing a systemic failure to provide notice to recipients. (Pl. Mem. at 7-8.) The Court disagrees. The letter simply acknowledges that compliance issues regarding notice would be addressed by the City. (Atty. Decl. Pl., Ex. K.) An acknowledgment that there is some noncompliance is not a confirmation by the City that they are in substantial noncompliance or that there are systemic failures.

The letter, however, does include information which bears on the question of compliance. It points out, for example, that there were problems with the computer data system and that the City would be instituting a corrective plan to remedy the situation. After the City instituted this corrective action plan, a subsequent case file review showed a noncompliance rate of 1.9%. (Def. Mem. at 21.) Plaintiffs do not dispute this rate.

### 2. What Constitutes Substantial Compliance

The determination of substantial compliance necessarily contains an element of subjectivity, and the district court must exercise its sound discretion in evaluating the relevant circumstances. The court, however, must not act arbitrarily, or abuse its discretion in considering the proffered data. *Barcia v. Sitkin*, 367 F.3d 87, 99 (2d Cir. 2004). Substantial compliance also is not a set percentage, and what is substantial compliance in one situation may not be substantial compliance in another. Because the purpose of such provisions is to regulate the behavior of one of the parties, an evaluation of substantial compliance should take into account the extent that the party in question has control over the level of compliance. This must be balanced by the

importance of the right affected and the harm from noncompliance. *See Fortin v. Comm'r of Massachusetts Dep't of Pub. Welfare*, 692 F.2d 790, 795 (1st Cir. 1982).

### 3. Whether There Was Substantial Compliance in this Instance

a. The Level of Compliance Contemplated

The starting point for this Court's analysis is that the Stipulation contemplates 100% compliance. Paragraph three states that the City will provide notice "to every public recipient who . . . is to be sanctioned." Moreover, apart from any claims of substantial noncompliance, paragraph fifteen requires the City to investigate any "individual incidents" of noncompliance. By virtue of the Stipulation, the City has an obligation to recipients as individuals, not simply as members of the class.

b. The Nature of the Right at Stake

In this case, the interest at risk is important. The sanctioned individuals risk the loss of public assistance and Medicaid benefits. Like welfare benefits, these payments are often crucial to a recipient's survival. *Fortin*, 692 F.2d at 795 ("'[S]ubstantiality' must depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest. In the present case, the interest at stake – entitlement to subsistence-level benefits – is great.")

c. The Nature of the Obligation Imposed

The Court must consider the nature of the obligation imposed on the City in determining what level of compliance it can reasonably be expected to achieve. While perfection may be the goal, the process at issue is administered by humans and perfection cannot reasonably be expected. Relevant questions include whether human error is likely to play a significant role in noncompliance, whether there is a need to exercise judgment or discretion, and whether external

forces might affect compliance. Here, the burden on the defendant to give notice is not heavy. Notice is issued through a computer process. While this introduces some element of human reliance, most of the compliance just depends on the computer process working properly.

### d. Compliance in This Case

The parties have stipulated to a noncompliance rate of 10%.[4] While this rate raises questions when the various factors are considered,[5] the City also points out that a significant portion of this was caused by computer issues, and that the most recent figure after resolution of this problem showed a noncompliance rate of 1.9%. This is within reasonable tolerance and shows substantial compliance. This finding is bolstered by the fact that Plaintiffs have not identified steps that the City could take to address any alleged systemic failures. *Cf. Barcia*, 367 F.3d at 96 (amelioration plan including proposals by plaintiffs put in place after defendant found to be not in substantial compliance); *Joseph A. by Wolfe v. New Mexico Dept. of Human Servs.*, 69 F.3d 1081, 1086 (10th Cir. 1995) ("[s]ubstantial compliance with the decree also requires enactment of fair, reasonable, and adequate procedures to effect long-term institutional reform") (internal citations omitted).

## IV. CONCLUSION

For the reasons set forth above, I recommend that the Plaintiff's motion be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Loretta

---

[4] This stipulation mitigates any inaccuracies that might result from the fact that two of the case file reviews at issue included but recipients and applicants, while the other two focused only on recipients.

[5] *See Fortin*, 692 F.2d at 793-96 (finding a lack of substantial compliance where the compliance rate approximated 94% in the six months before trial, but where rate had fluctuated and no explanation was given for failures to comply).

A. Preska, 500 Pearl Street, Room 1320, and to the chambers of the undersigned, Room 1970.

Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

DATED: December 29, 2010
New York, New York

Respectfully Submitted,

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

Counsel for Plaintiffs:
Yisroel Schulman, Esq. (YS 3107)
New York Legal Assistance Group
Randal Jeffrey, of Counsel (RSJ 3396)
Sabrina Jeffery, of Counsel (ST 2781)
450 West 33rd Street, 11th Floor
New York, NY 10001

Counsel for Defendant:
Michael A. Cardozo
Corporation Counsel of the City of New York
Martin Bowe, of Counsel, Room 2-194
100 Church Street
New York, NY 10007